506 So.2d 675 (1987)
STATE of Louisiana
v.
Roger J. PARKER.
STATE of Louisiana
v.
David R. TELL.
Nos. 86-KA-690, 86-KA-691.
Court of Appeal of Louisiana, Fifth Circuit.
April 13, 1987.
Rehearing Denied May 18, 1987.
*677 John M. Mamoulides, Dist. Atty., Dorothy Pendergast, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Martha E. Sassone, I.D.B., Philip E. O'Neill, John F. Rau, Jr., Gretna, for defendant-appellant.
*678 Before KLIEBERT, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
Roger J. Parker and David R. Tell were charged by Bill of Information with the offense of armed robbery, in violation of R.S. 14:64. At the arraignment Parker entered a plea of not guilty and not guilty by reason of insanity and Tell entered a plea of not guilty. After a sanity hearing, the court found Parker legally sane but unable to assist counsel in his own defense. He was remanded to the parish prison to receive treatment for his depression. A second sanity hearing was held a few months later and Parker was found legally sane and mentally competent to stand trial and to assist his counsel in his own defense.
After a hearing on various motions which were denied by the trial judge, the defendants proceeded to trial by a twelve man jury and both were found guilty as charged. On July 31, 1986, the trial judge heard and denied a Motion for New Trial. Following waiver of delays, the court sentenced Roger Parker to imprisonment at hard labor for ninety-nine years without benefit of parole, probation or suspension of sentence. David Tell was sentenced at hard labor for a term of fifty years. This appeal followed and David Tell urges seven assignments of error and Roger Parker alleges ten assignments. Many of the assignments are similar and will be handled accordingly.
For the following reasons we hold that both defendants were not denied due process and received a just and fair trial. We affirm their convictions and sentences.

FACTS
On May 23, 1985, a man, later identified as Roger Parker, entered Danny and Clyde's Food Store located at 123 Terry Parkway in Jefferson Parish, and robbed the cashier, Elizabeth Albers, of over one hundred dollars while armed with a shotgun. A second employee, Rhonda O'Neil, was also in the store at the time of the armed robbery; however, she was apparently not seen by Parker as she was in the cooler. There was testimony at trial that the defendant Parker had been in the store twice previously before the robbery between midnight and 3:00 a.m. to make various purchases.
Immediately after Parker left the store with the money, the holdup alarm was hit to alert police officers of the robbery. Subsequent to the alarm being set off, two men entered the store and stated that they saw the suspect drive away in a yellow Maverick with a left taillight out, heading down Terry Parkway. Ms. O'Neil testified that these two men were regular customers who came into the store every morning; however, no effort was made to locate them. A description of the vehicle was immediately broadcast over the police radio. Shortly thereafter, the vehicle was stopped with both suspects in it. The victim was then transported to the location where the suspects were stopped. At this time she positively identified Roger Parker as the perpetrator of the armed robbery. The other suspect was David Tell, who was the driver of the getaway car. It should be noted that the car was stopped almost immediately after the vehicle description was broadcastthis fact tends to negate any alibi defense on the part of David Tell. After the police saw currency on the front seat of the car, a search of the vehicle was executed. Although the majority of the money was recovered, the shotgun was not found.

ASSIGNMENTS OF ERROR FOR DAVID TELL

ASSIGNMENT OF ERROR NUMBER 1
The court erred in denying the motion for severance on behalf of David Tell on the grounds that the defenses of Roger Parker, co-defendant, were antagonistic to the defenses of David Tell and in denying defendant's motion for a new trial on these grounds.
Defendant, David Tell, filed a Motion for Severance on the grounds that the defense of co-defendant, Roger Parker, was antagonistic to his defense. Tell bases his motion on the fact that co-defendant Parker entered *679 a plea of not guilty and not guilty by reason of insanity, which plea "is tantamount to an alternative admission of criminal conduct". Defense counsel for Tell further asserts in his brief that "the fact that Tell was compelled to be tried with Parker inescapably linked Tell with this alternative admission of the commission of the offense and destroyed his right to a fair and impartial trial", thus making this a case where "justice requires a severance".
The Motion for Severance was heard on March 20, 1986. At the hearing, defense counsel urged that the Motion for Severance be granted because Tell was going to offer an alibi defense which would be injurious to Parker's defense; however, during this hearing, he merely alleged there would be antagonistic defenses as he called no witnesses at the hearing to support his position. Further, there is no allegation on the part of co-defendant Parker that he intended to blame Tell for the offense.
La.C.Cr.P. art. 704 sets forth the law on severance and reads as follows:
"Jointly indicted defendants shall be tried jointly unless:
1) The state elects to try them separately; or
2) The court, on motion of the defendant, and after contradictory hearing with the district attorney is satisfied that justice requires a severance."
Persons jointly indicted are not entitled to a severance as a matter of right, rather the decision is one resting in the sound discretion of the trial judge. A denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. State v. McGraw, 366 So.2d 1278 (La.1978). The mover must demonstrate by convincing evidence that the defenses to be presented will be antagonistic so that justice requires a severance. State v. Thibodeaux, 315 So.2d 769 (La.1975); State v. Diaz, 461 So.2d 1099 (La.App. 5th Cir.1984).
In the present case, although there is a potential for antagonistic defenses, David Tell failed to produce any evidence at the hearing to show that a joint trial would be prejudicial to his interests. He merely alleged that he had an alibi, specifically that he was at his residence at the time of the armed robbery and that he had loaned his car to Roger Parker; however, there is no evidence to indicate that either defendant was attempting to place the blame on the other. Since no evidence supporting Tell's claim of antagonistic defenses was introduced, this assignment of error is without merit.

ASSIGNMENTS OF ERROR NUMBERS 2 AND 3
2. The court erred in denying the challenge for cause by counsel for David Tell of one Melissa Rosenthal, a prospective juror, on the grounds that the trial assistant district attorney had prosecuted and obtained a guilty plea from a defendant charged with robbing the said Melissa Rosenthal and in denying appellant's motion for a new trial on these grounds. Defendant's last peremptory challenge was used on this prospective juror.
3. The court erred in denying the challenge for cause by counsel for David Tell of one Charles W. Hagen, a prospective juror, who lived next door to Gretna Chief of Police, B.H. Miller, Jr., frequently discussed police business with him, was a close personal friend of two other Gretna police officers, with whom he frequently discussed police business and was employed by Social Security in criminal investigating, and in denying appellant's motion for a new trial on these grounds.
The defendant asserts that the trial judge erred in denying his challenges for cause for these two prospective jurors who allegedly had close personal relations with law enforcement personnel.
Melissa Rosenthal, one of the prospective jurors, testified during voir dire that she knew Eric Honig (the prosecuting attorney) because he was also the prosecuting attorney in a prior criminal case in which she was the victim. The extent of her relationship with Mr. Honig is that she met with him once to discuss the prior case, and she was also in the courtroom during its prosecution. Ms. Rosenthal further testified *680 that she also knew one of the defense attorneys (Richard Thompson) because he worked in the same building as her father. Ms. Rosenthal stated that the fact that she knew these two attorneys would make no difference to her if she were called to serve on the jury. She reassured the court that she would show no favoritism to either attorney. During voir dire, defense counsel challenged Ms. Rosenthal for cause. When the trial judge denied this challenge, he exhausted his final peremptory challenge.
Defendant also challenged for cause Charles Hagen. During voir dire, Mr. Hagen, a claims representative for social security, testified that he knew Chief Miller of the Gretna Police very well because they are neighbors. He also knew two other police officers, and he sometimes discussed police activities with these people. He further testified that he did not know the officer involved in this case (Officer McDowell). Mr. Hagen told the court that his contacts with these Gretna police officers would not affect his being able to render fair and impartial verdicts. Both defense attorneys challenged Mr. Hagen for cause, but the challenges were refused by the trial judge.
Both our federal and state constitutions guarantee the accused in a criminal proceeding the right to a trial by an impartial jury. 6th Amendment, U.S. Const; La. Const. Art. 1, Section 16. In addition, La. C.Cr.P. art. 797 protects the right to an impartial jury. The challenges for cause in question on appeal were based on La.C. Cr.P. art. 797(3) which reads as follows:
The state or the defendant may challenge a juror for cause on the ground that:
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict.
A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. A trial judge, however, is granted great discretion in ruling on a challenge for cause, and such a ruling will not be disturbed unless when reviewing the entire voir dire as a whole there is an indication that there was an abuse of discretion. State v. Ward, 483 So.2d 578 (La.1986); State v. Jones, 474 So.2d 919 (La.1985).
The mere relationship of a prospective juror to a law enforcement officer is not of itself grounds for cause; however, these relationships should be closely scrutinized by the courts. State v. Jones, supra at 926. The question to ask is whether the juror can assess the credibility of each witness independent of his occupation. Such determinations are in the wide discretion of the trial judge. State v. Smith, 430 So.2d 31 (La.1983).
Many cases have dealt specifically with the denial of the challenge for cause of a prospective juror who had some acquaintence with the prosecuting attorney. See State v. Winn, 412 So.2d 1337 (La.1982); State v. Gintz, 438 So.2d 1230 (La.App. 3rd Cir.1983); State v. McIntyre, 381 So.2d 408 (La.1980).
In the present case Ms. Rosenthal indicated that she would show no favoritism to either side and in accord with the above line of cases, the defendant failed to show how her dealings with the prosecuting attorney could have influenced her decision in arriving at a verdict.
As to the denial of the challenge for cause for Charles Hagen who was a neighbor of Chief Miller and knew other police officers, the main issue to determine is whether this association would affect his ability to render a fair and impartial verdict.
In State v. Chapman, 410 So.2d 689 (La.1981), the prospective juror had a brother-in-law who was a police officer and would testify at the trial. There was no abuse of the trial judge's denial of defendant's *681 challenge for cause in light of her testimony that she never discussed the case with her brother-in-law and also that there was nothing in the record which demonstrated that her verdict was affected by her relationship to her brother-in-law.
In State v. Ford, 489 So.2d 1250 (La. 1986), the defendant claimed it was error for the trial judge not to excuse for cause one prospective juror based upon that person's "constant and favorable" association with policemen in the community. The defendant based her claim on testimony taken at voir dire in which the potential juror admitted knowing "too many officers to name all of them". In upholding the trial judge's denial of the challenge for cause the court held that there was nothing in the juror's testimony that provided a basis from which bias, prejudice or inability to render an impartial judgment might be inferred.
The mere relationship of a prospective juror with law enforcement officers does not necessarily provide the grounds for a challenge for cause. Further questioning of the juror must determine that because of the relationship, it would affect his being able to render a fair and impartial verdict.
Here, although Mr. Hagen was close friends with Chief Miller and also knew two other police officers, he testified that he did not know Officer McDowell (who was going to testify) and further that his contacts with these Gretna police officers would not affect his being able to render a fair and impartial verdict, and there was nothing in the record to indicate otherwise. Based on the entire voir dire as a whole, the trial judge did not abuse his discretion in denying defendant's challenge for cause of Charles Hagen.
Assignments of error numbers two and three are without merit.

ASSIGNMENT OF ERROR NUMBER 4
The court erred in admitting, over objection to defense counsel, hearsay statements of two men who described the vehicle alleged to have been used by the robber and in denying appellant's motion for a new trial on these grounds.
At trial, Rhonda O'Neil and Elizabeth Albers (the two employees in the store at the time of the robbery) testified that immediately after the suspect left the store, two men came in, asked if they were robbed and upon being told "yes", gave a description of the getaway car as a yellow Maverick with a left taillight out, heading down Terry Parkway. This description was immediately broadcast over the police radio, and a car matching this description was stopped. Defense counsel objected to the introduction of this testimony at trial, arguing that it was hearsay and thus inadmissible in a criminal trial. The judge allowed the testimony to be introduced.
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. State v. Feeback, 414 So.2d 1229 (La.1982); State v. Hatcher, 372 So.2d 1024 (La.1979).
Hearsay evidence is inadmissible in a criminal trial, unless it fits within one of the specifically designated exceptions. La. R.S. 15:434. However, evidence is not hearsay, and thus admissible, if it is introduced to show that the utterance occurred or that the conversation took place rather than to show the truth of the matter asserted. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Bailey, 470 So.2d 342 (La.App. 5th Cir.1985), appeal after remand 494 So.2d 1199 (La.App. 5th Cir.1986), writ den. 496 So.2d 351 (La.1986).
The testimony of the two witnesses regarding the description of the car was not used to prove the truth of the matter asserted. Rather, it was used to merely show that the statement occurred and the police immediately acted thereon. The testimony was not used to prove the truth of the statement, but simply to establish that the officers had probable cause to stop the defendants based on the information received as to the description of the vehicle.
*682 Further, the state has argued that the statements were properly admitted under the res gestae or "excited utterance" exception to the hearsay rule, R.S. 15:447 and R.S. 15:448. The statement was made immediately subsequent to the commission of the crime and is part of the res gestae and was properly admitted into evidence. See State v. Johnson, 461 So.2d 1273 (La. App. 1st Cir.1984) for a similar factual situation.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 5
The trial judge erred in conducting a combined poll of the jurors instead of a separate poll for each defendant, in failing to have the name of each juror written on the slip of paper given to the juror, in ordering the jurors not to sign their names, in attempting to correct the combined poll by a single question asked simultaneously to all of the jurors and answered simultaneously by them and in failing to conduct two separate polls after becoming aware of the improper and illegal procedure in the first poll.
In this case, the jury returned a verdict of guilty as charged for both defendants. Following the verdict, a jury poll was requested by defense counsel. Each juror was handed a blank piece of paper and told to write "yes" or "no" on it, and also told by the judge not to sign their names. After counting the votes, he asked the jurors collectively if the "yes" applied to both defendants. All answered affirmatively. No objection was made at this time to the polling procedure, and defense counsel even indicated his satisfaction to the judge.
Defense counsel is now arguing that the polling requirements set forth in La.C.Cr.P. art. 812 have not been met. Art. 812 reads as follows:
The court shall order the clerk to poll the jury if requested by the state or the defendant. It shall be within the discretion of the court whether such poll shall be conducted orally or in writing by applying the procedures of Paragraph (1) or Paragraph (2) of this Article.
(1) Oral polling of the jury shall consist of the clerk's calling each juror, one at a time, by name. He shall announce to each juror the verdict returned, and ask him, "Is this your verdict?" Upon receiving the juror's answer to the question, the clerk shall record the answer.
If, upon polling all of the jurors, the number of jurors required by law to find a verdict answer "Yes", the court shall order the clerk to record the verdict and the jury shall be discharged. If, upon polling all of the jurors, the number required to find a verdict do not answer "Yes", the jury may be remanded for further deliberation, or the court may declare a mistrial in accordance with Article 775.
(2) The procedure for the written polling of the jury shall require that the clerk hand to each juror a separate piece of paper containing the name of the juror and the words "Is this your verdict?" Each juror shall write on the slip of paper the words "Yes" or "No" along with his signature. The clerk shall collect the slips of paper, make them available for inspection by the court and counsel, and record the results. If a sufficient number of jurors as required by law to reach a verdict answer "yes" the clerk shall so inform the court. Upon verification of the results, the court shall order the clerk to record the verdict and order the jury discharged. If an insufficient number required to find a verdict answer "Yes", the court may remand the jury for further deliberation or the court may declare a mistrial in accordance with Article 775. Amended by Acts 1975, No. 475, sub. 1.
Although the defendant now asserts that the technical requirements of Art. 812 may not have been followed, he failed to make a contemporaneous objection at trial to the procedure used to poll the jury. Thus, the trial court was not afforded an opportunity to comply with the technical requirements. Although defendant raised this issue in his motion for new trial, he failed to make a contemporaneous objection in accordance with La.C.Cr.P. art. 841, to the polling procedure used, and thus, the *683 procedure cannot now be reviewed. State v. Sosa, 328 So.2d 889 (La.1976); State v. Gardette, 352 So.2d 212 (La.1977); State v. Lamb, 458 So.2d 996 (La.App. 3rd Cir. 1984).
Furthermore, the record shows that the verdict was correctly recorded as returned by the jury and that they unanimously agreed that the verdict applied to both defendants.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 6
The trial court's jury charges did not make any distinction between the culpability of the perpetrator of the armed robbery and the culpability of a principal, based upon the mental state of the principal.
It should initially be noted that neither defense counsel objected to the jury charges at the trial court level. La.C.Cr.P. art. 801 provides that a "party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error". Although this issue was raised in a Motion for New Trial and on appeal, counsel failed to make a contemporaneous objection. Absent such a contemporaneous objection, a defendant may not on appeal complain of the judge's charge to the jury. La.C.Cr.P. art. 841; State v. Sepcich, 473 So.2d 380 (La.App. 5th Cir.1985), appeal after remand 485 So.2d 559 (La.App. 5th Cir.1986).
Although there was no timely objection to the court's jury charge, we will discuss the merits of this assignment to avoid any future review on this issue.
It must be determined whether the jury instructions sufficiently indicated who must possess the criminal intent in order to sustain a conviction. The specific jury charges at issue are as follows: "All persons concerned in the commission of a crime are principals and are guilty of the crime charged if, whether present or absent, they directly commit the act constituting the crime, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime."
Taken in isolation, this language could be interpreted to relieve the state of its burden of proving that each defendant had the general criminal intent to commit the armed robbery. However, it is now necessary to look at the charges as a whole to determine if the state was relieved of its burden of proof. Relevant portions of the jury charges read as follows:

The defendants are presumed to be innocent until each element of the crime necessary to constitute their guilt is proven beyond a reasonable doubt. The defendants are not required to prove that they are innocent; thus the defendants begin with a clean slate. The burden is upon the state to prove each defendant's guilt beyond a reasonable doubt ...

We are now to consider the nature and character of the crime for which the defendants are being tried, what are the ingredients and what are the essentials necessary to constitute it. Criminal intent may be specific or general. Specific criminal intent is that state of mind which exists when the circumstances indicate that the defendants actively desire the prescribed criminal consequences to follow his act or failure to act. General criminal intent is present when the circumstances indicate that the defendant must have adverted to the prescribed criminal consequences that are reasonably certain to follow from his act or failure to act. General criminal intent is always present when there is specific intent. Whether criminal intent is present must be determined in the light of ordinary experience. Intent is a question of fact which may be inferred from the circumstances. You may presume or infer that the defendant intended the natural and probable consequences of his act ...
All persons concerned in the commission of a crime are principals and are guilty of the crime charged, if whether present or absent, they directly commit the act constituting the crime, aid and abet in its commission, or directly or *684 indirectly counsel or procure another to commit the crime. The defendants are charged with armed robbery of Elizabeth Albers. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation while armed with a dangerous weapon....
Thus, in order to convict a defendant of armed robbery you must find, number one, that the defendant took something of value belonging to another; number two, that the thing of value taken was in the possession or in the immediate control of Elizabeth Albers when it was taken; and number three, the defendant used force or intimidation against Elizabeth Albers in order to accomplish the taking; and number four, that the defendant was armed with a dangerous weapon....
The judge further instructed the jury on the responsive verdicts to the crime of armed robbery and the elements of each.
The jury charges are sufficient, when taken as a whole, they explained the proper allocation of burdens with sufficient clarity that any ambiguity in the particular language challenged could not have been understood by a reasonable juror as shifting the burden of persuasion.
The crux of this issue is whether the jury charges make clear that each defendant must possess the required intent in order to sustain a conviction for each one respectively. The challenged jury charges when read in isolation seem to be improper; however, when the jury charges are examined as a whole, the language is sufficient to show that the burden of proof was on the state to prove that each defendant had the general criminal intent to support a conviction of armed robbery.
Jury charges should always be reviewed as a whole and not have portions read in isolation. Whenever a trial judge charges a jury he does so by presenting to the jury his entire instructions and any review should always consider the entire presentation.
This assignment has no merit.

ASSIGNMENT OF ERROR NUMBER 7
The court erred in imposing a sentence of fifty years at hard labor without parole, probation or suspension of sentence upon a 27 year old man with one prior conviction for simple burglary, one for simple burglary of a pharmacy and a history of drug abuse.
The trial judge sentenced David Tell, who was convicted of armed robbery, to imprisonment at hard labor for a term of fifty years without benefit of parole, probation, or suspension of sentence. L.R.S. 14:64(B) sets forth the range of penalties for armed robbery and reads as follows: "Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence". Defendant in this assignment of error, is contending that his fifty year sentence, which is in the mid-range of possible penalties, is excessive.
In reviewing the sentencing guideline in La.C.Cr.P. art. 894.1, the trial judge need not recite each aggravating and mitigating circumstance listed in the article; however, the record must reflect that he adequately considered those factors.
In the present case, a pre-sentence investigation report is found in the record. As such, even if it is found that the trial court failed to follow the sentencing guidelines in La.C.Cr.P. art. 894.1, the pre-sentence report, since it is in the record, may be viewed as containing adequate support for the sentence imposed. State v. Torres, 470 So.2d 319 (La.App. 5th Cir.1985); State v. Keller, 470 So.2d 325 (La.App. 5th Cir. 1985).
The trial judge sufficiently particularized the sentence to the individual defendant and to the offense. At the outset, the judge ordered a pre-sentence investigation, and at sentencing considered all the items contained therein. The defendant did not point out any error in the statements in the *685 P.S.I., although his mother voiced an objection to the statement that he had behavioral problems in school. The judge, in further complying with La.C.Cr.P. art. 894.1 also considered defendant's two prior felony convictions, his behavioral problems in school including suspension, and the fact that he admitted to drug abuse but failed to complete the attempted rehabilitation processes that were accorded him. Also, noted was the severity of the offense of armed robbery, and the fact that the judge felt that the defendant represented a threat to society. The judge further noted that the only mitigating factor seemed to be the fact that defendant was employed.
The reasons dictated by the trial judge for imposition of a fifty year sentence in addition to the presentence investigation report, support the sentence imposed. Furthermore, similar sentences have consistently been imposed and upheld in similar circumstances. In State v. Joseph, 437 So.2d 280 (La.1983), the Louisiana Supreme Court held that a sentence of fifty years for armed robbery was not facially excessive and was within trial court's discretion. In imposing the sentence, the trial judge considered defendant's disregard of human life during his attempt to escape from the officers and further considered defendant's three prior felony convictions. The judge had also noted that the defendant required correctional treatment and that a lesser sentence would deprecate the seriousness of the crime.
This court has also consistently upheld fifty year sentences for armed robbery. See State v. Keller, 470 So.2d 325 (La.App. 5th Cir.1985); State v. England, 442 So.2d 1199 (La.App. 5th Cir.1983); and State v. Bannister, 441 So.2d 334 (La.App. 5th Cir. 1983).
Given the trial judge's reasons for sentence and the information contained in the pre-sentence investigation report in conjunction with the fact that defendant received a mid-range sentence, this assignment is without merit.

ASSIGNMENTS OF ERROR FOR ROGER PARKER

ASSIGNMENTS OF ERROR NUMBER 1 AND 2
1. The trial court committed reversible error in finding the defendant legally sane and mentally competent to stand trial.
2. The trial court committed reversible error in denying defense counsel's motion to suppress the identification.
These two assignments of error, though designated, were not briefed by defense counsel and thus are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Dirden, 430 So.2d 798 (La.App. 5th Cir.1983).

ASSIGNMENT OF ERROR NUMBER 3
The trial court erred in denying defense counsel's motion to suppress the evidence; United States currency seized by the police as the result of an illegal search of an automobile.
Prior to trial, defense counsel moved to suppress evidence seized by police during a search of David Tell's automobile. At the hearing on the Motion to Suppress Evidence, Lieutenant Gregoire testified that pursuant to a radio transmission, he was informed of the armed robbery at Danny and Clyde's, and was also given a description of the suspect vehicle. The vehicle was described as a yellow Maverick with a left taillight missing. Within a few minutes of the broadcast, Lieutenant Gregoire spotted a car fitting the description and proceeded to stop the vehicle. Lieutenant Gregoire ordered the defendants to get out of the car. They were then "patted down" by the police officers to check for weapons. During the "pat down", no weapons or contraband were found on the defendants. However, once the defendants had exited the vehicle, the officers observed some currency on the front seat of the car. The vehicle was subsequently searched and found to contain some more currency in a brown paper sack. The total amount of currency found was $166.00. Lieutenant Gregoire had the currency counted, photographed, and returned to Danny and *686 Clyde's. The photographs of the cash were admitted as evidence.
Defense counsel is now arguing that the Motion to Suppress the Evidence was improperly denied by the trial judge. In so arguing, defendant contends that the plain view doctrine did not apply, that the defendants and the automobile were totally under the control of the police and no danger of harm or destruction of evidence existed, precluding justification under the theory of "exigent circumstances".
It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable unless it is justified by one of the narrowly drawn exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), rehearing denied 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971); Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 584 (1973).
Once a defendant makes an initial showing that a warrantless search occurred, the burden of proof shifts to the state to affirmatively show that the search is justified under one of the narrow exceptions to the rule requiring a search warrant. State v. Hernandez, 410 So.2d 1381 (La.1982).
There is no doubt in the present case that the search was conducted without a warrant. However, the state contends that the search came within the "automobile exception" to the warrant requirement, or in the alternative, that the evidence was spotted in plain view on the seat of the vehicle.
Each principle will now be addressed individually.
In discussing the "plain view" doctrine in State v. Duperon, 448 So.2d 720, 723 (La. App. 5th Cir.1984), this court stated:
The plain view doctrine is an exception to the search warrant requirement in that when there is no intrusion into a protected area, there is no "search" for purposes of the Fourth and Fourteenth Amendments. The jurisprudence has designated three criteria which must be established before the viewing will be removed from the protections of the Fourth Amendment: (1) the prior valid intrusion into a protected area; (2) an inadvertent discovery of evidence; and (3) the evidence immediately recognizable as contraband or evidence. Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971); State v. Brown, 370 So.2d 525, 527 (La. 1979).
It must now be determined whether the above three requirements were met in the present case. The first requirement was met because the officer had reasonable cause to stop the vehicle. La.C.Cr.P. art. 215.1 provides in part that: "a law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense".
"Reasonable cause for an investigatory stop or detention is something less than probable cause. Nevertheless, it requires the detaining officer to have articulable knowledge of particular facts sufficient reasonably to suspect the detained person of criminal activity." State v. Duperon, supra; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Lieutenant Gregoire had reasonable cause to stop the defendants. The vehicle description was broadcast immediately after the armed robbery, and within a few minutes of the broadcast, a vehicle which fit the description was spotted and stopped.
Likewise, the second and third requirements needed to invoke the "plain view" doctrine were also satisfied. The officer, without intruding into a protected area, inadvertently discovered the immediately recognizable evidence laying on the front seat when the doors were opened after the defendants had exited the vehicle.
It should further be noted that it was reasonable for the officer to approach the vehicle to make a general visual survey from outside the car in order to insure his safety because of the possibility of the car containing a weapon which had been used in the armed robbery.
*687 Although the three requirements of the plain view doctrine were satisfied, as was observed in the Duperon case, the plain view doctrine alone does not justify the seizure of the evidence.
Once the officer becomes aware of the contraband or evidence, he must ordinaily obtain a search warrant in order to seize it. State v. Edsall, 385 So.2d 207, 210 (La.1980). Two requirements must be satisfied before a warrantless seizure of evidence within a movable vehicle is authorized under the automobile exception of the search warrant requirement: (1) there must be probable cause to believe the vehicle contains contraband or evidence of a crime; and (2) there must be exigent circumstances requiring an immediate warrantless search. Chambers v. Maroney, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).
State v. Duperon, supra at 723.
In this case, the officer clearly had probable cause to believe the currency was inside the car since he had previously seen it in "plain view" laying on the front seat. The officer also had probable cause to believe there was a shotgun in the car which was used in the armed robbery, but which had not yet been located. The shotgun was not recovered during the search of the vehicle.
Regarding the second requirement of "exigent circumstances", the defense counsel argues that since the defendants and the automobile were totally under the control of the police and no danger of harm or destruction of evidence existed, the justification of the search under the theory of "exigent circumstances" was precluded.
"Exigent circumstances" have been defined as "the impracticability of obtaining a warrant due to the possibility that the car could be moved either by its occupants, if not arrested or by someone else." An immediate warrantless search is therefore, constitutionally permissible under the automobile exception when the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. State v. Chaney, 423 So.2d 1092 (La.1982).
In this case, there were exigent circumstances justifying an immediate warrantless search and seizure of the evidence from the vehicle. The officer was alerted that an armed robbery had been committed. The officer spotted a vehicle fitting the description of the getaway car, subsequently stopped the car, and ordered the two suspects out. Thereafter, both were arrested. If the officers would have abandoned the car where it was stopped, there would have been a significant possibility that its contents may never have been found again, especially since the car was stopped on a public street and the evidence (money on the front seat) was in plain view. Further, there was the possibility that there was a shotgun in the car. All these factors contributed to the exigency of the situation.
In State v. Guzman, 362 So.2d 744, 749 (La.1978), cert den., Guzman v. Louisiana, 443 U.S. 912, 99 S.Ct. 3103, 61 L.Ed.2d 876 (1979) the court stated:
There is substantial merit in the contention that police must obtain a search warrant for an automobile when they can do so without jeopardizing the contraband sought, but neither this court nor the United States Supreme Court has made that requirement. Although a search may be a greater intrusion into privacy than the sequestration, immobilization, impoundment or detention of the thing to be searched, and although a detached magistrate should be better able than the police to decide whether probable cause to search exists, the sequestration is itself a seizure. The validity of both seizures and searches is measured by the same constitutional standards. It would require an extension of constitutional law to permit the police to seize without a warrant, and then forbid them to search the thing seized unless a warrant is first obtained.
"For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant.

*688 Given probable cause to search, either course is reasonable under the Fourth Amendment." Chambers v. Maroney, supra 399 U.S. at 52, 90 S.Ct. at 1981, 26 L.Ed.2d at 428.
Under the facts of this case, there was probable cause to believe evidence was contained in the vehicle, as the currency was in plain view, and further there were exigent circumstances justifying the immediate warrantless search. As such, the search and subsequent seizure of the evidence fall within the "automobile exception" to the warrant requirement.
This assignment is without merit.

ASSIGNMENTS OF ERROR NUMBERS 4 AND 9
The trial court committed reversible error in denying defense counsel's challenge for cause of juror, Charles Hagen.
The trial court erred in denying the challenge for cause of a prospective juror, Melissa Rosenthal.
These assignments are without merit. (See previous consideration; Assignments of Error Nos. 2 and 3 of David Tell.)

ASSIGNMENT OF ERROR NUMBER 5
The trial court committed reversible error in denying defense counsel's motion for a new trial.
In this assignment, defendant is basically arguing that the trial court erred in denying defense counsel's Motion for New Trial because the evidence was insufficient to justify the verdict. As defendant relies on Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and State v. Raymo, 419 So.2d 858 (La.1982), the following discussion will focus on whether the evidence was sufficient based on Jackson standard of review.
The test for determining sufficiency of evidence was first enunciated in Jackson v. Virginia, supra. The standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Gaudin, 493 So.2d 234 (La.App. 5th Cir.1986).
When circumstantial evidence is used to prove the commission of the offense, L.S. A.-R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a separate test from the Jackson standard, but rather a "helpful methodology for its implementation". Ultimately, all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that defendant is guilty beyond a reasonable doubt. State v. Sharlow, 493 So.2d 213 (La.App. 5th Cir.1986).
L.S.A.-R.S. 14:64 defines armed robbery as: "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon".
In State v. Green, 469 So.2d 1161 (La. App. 5th Cir.1985), the cashier/victim testified that money (approximately $85.00) and three cartons of cigarettes were removed from her control by a perpetrator who was armed with a dangerous weapon, a gun. She identified the defendant as the perpetrator both prior to and at the trial. In interpreting the evidence in a light most favorable to the prosecution, the court found there was sufficient evidence to establish each element of the offense of armed robbery beyond a reasonable doubt.
In the instant case, the victim, Elizabeth Albers, testified that over $100.00 in currency was removed from her control by a perpetrator who was armed with a dangerous weapon, a shotgun. Immediately after the armed robbery, two men came into the store with a description of the suspect vehicle. The getaway car was spotted by a police officer and stopped. The victim was then transported to that location, at which time she identified Roger Parker as the perpetrator. At trial, Ms. Albers again identified Parker as the perpetrator of the armed robbery. To corroborate this identification, the victim and a co-employee further testified that they had seen Roger Parker two times previously that night between *689 midnight and 3:00 a.m. when he came in to make some purchases.
In viewing the evidence presented above in a light most favorable to the prosecution, there was sufficient evidence to establish each element of the offense of armed robbery beyond a reasonable doubt.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 6
The trial court erred in sentencing the defendant to a term of ninety-nine (99) years, which sentence is excessive.
The defendant, Roger Parker, was sentenced to imprisonment at hard labor for 99 years without benefit of parole, probation, or suspension of sentence. This is the maximum possible penalty for a conviction of armed robbery under L.R.S. 14:64. It should be noted that maximum sentences are generally reserved for the most egregious or blameworthy of offenders. State v. Telsee, 425 So.2d 1251 (La.1983); State v. Harrison, 446 So.2d 423 (La.App. 4th Cir. 1984).
This court also upheld the imposition of a 99 year sentence in State v. Vinet, 470 So.2d 348 (La.App. 5th Cir.1985). In affirming the sentence for defendant's conviction of armed robbery, this court noted that defendant first threatened to kill the victim, but changed his mind and robbed her. He also threatened her as he left stating that he was not afraid to kill her, and he even called her the day after the robbery and told her he was sorry he had not killed her, thus putting her in fear for her life. Also considered was the fact that defendant was already serving a sentence for second degree murder. This court found that the trial judge did not abuse his discretion in imposing the maximum sentence upon defendant.
The maximum sentence of 99 years has also been upheld in the following cases: State v. Jack, 448 So.2d 725 (La.App. 5th Cir.1984); State v. Wilson, 452 So.2d 773 (La.App. 4th Cir.1984); State v. V. Thomas, 479 So.2d 28 (La.App. 4th Cir.1985); State v. Roberson, 445 So.2d 12 (La.App. 4th Cir.1983), writ den. 449 So.2d 1344 (La.1984); State v. Nelson, 449 So.2d 161 (La.App. 4th Cir.1984).
In imposing the sentence in the present case, the trial judge stated:
"All right. The court has read this articleread this presentence report and the gist of it is that Mr. Parker has five previous felony convictions. He has also juvenile records in Jefferson Parish as well as in Orleans Parish. The report indicates that he did or does take drugs and at the time of the incident involved in this case, he was also hung out on drugson alcohol. The court believes that this man is a threat to society. His past historyit's inconceivable that he can live peacefully in this society without violating the law. Therefore, because of his extensive past record and because of his great threat to society and because of hisunder Article 894.1, I think that his chances of rehabilitatingI haven't seen anything that are mitigating circumstances that are required to be enumerated, and none of them have been presented to me, the court is going to sentence Mr. Parker to serve a period in the Louisiana Department of Corrections at hard labor for a term of ninety-nine years without benefit of parole, probation or suspension of the execution of the sentence. And it's so ordered."
The trial judge sufficiently particularized the sentence to both the circumstances of the offense and to the offender. The severity of the crime should be noted, in addition to the fact that defendant put the victim in fear of her life by stating, "Give me the money or I'll blow your brains out." Given the circumstances of this case and defendant's lengthy criminal record, the sentence imposed is not excessive.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 7
Also assigned as error are any and all errors patent on the face of the record.
*690 We have reviewed the entire record and find no errors patent.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 8
It was error for the trial court to deny the defendant's motion for severance.
Defense counsel for David Tell moved for a severance on the grounds of antagonistic defenses. "An objection made when more than one defendant is on trial, even a written pre-trial motion for a severance, is presumed to have been made on behalf of all defendants unless the contrary appears true." State v. Webb, 424 So.2d 233, 236 (La.1982); La.C.Cr.P. art. 842. Because of this presumption, this issue is properly raised by defendant, Roger Parker.
This assignment of error is without merit. (See previous consideration; Assignment of Error No. 1 of David Tell.)

ASSIGNMENT OF ERROR NUMBER 10
The court erred in admitting over objections of defense counsel, hearsay statements of two men who described the vehicle alleged to have been used by the perpetrator of the crime.
This assignment of error is without merit. (See previous consideration; Assignment of Error No. 4 of David Tell.)

NON-DESIGNATED ASSIGNMENT OF ERROR
The trial judge erred in conducting a combined poll of the jurors instead of a separate poll for each defendant.
Defense counsel failed to designate this assignment pursuant to C.Cr.P. art. 844. Although this assignment need not be considered, it was previously considered. (See Assignment of Error No. 5 of David Tell.)
This assignment is without merit.

CONCLUSION
Finding none of David R. Tell's or Roger J. Parker's assignments of error to have merit, we affirm their conviction and sentence.
AFFIRMED.