443 So.2d 744 (1983)
STATE of Louisiana
v.
Eric JOHNSON.
No. KA-0500.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1983.
*746 John M. Lawrence, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
Before AUGUSTINE, LOBRANO and WILLIAMS, JJ.
WILLIAMS, Judge.
This is an appeal by defendant Eric Johnson from his convictions and sentences for violations of La.R.S. 14:42 (aggravated rape), La.R.S. 14:44 (aggravated kidnapping), and La.R.S. 14:64 (armed robbery).
Defendant was indicted by a grand jury for aggravated rape, aggravated kidnapping, aggravated crime against nature (La. R.S. 14:89.1), and two counts of armed robbery. One of the counts of armed robbery was severed upon defendant's motion. After trial by a twelve person jury, defendant was found guilty of all charges except aggravated crime against nature.[1] The state filed a multiple bill of information against defendant charging that he previously had pleaded guilty to simple robbery and had been sentenced to 18 months in Orleans Parish Prison. After a hearing, defendant was given two life sentences without benefit of parole, probation, or suspension of sentence, on the charges of aggravated kidnapping and aggravated rape. Having been adjudged a multiple offender, defendant was also sentenced to 198 years for armed robbery.
Defendant appeals from these convictions and sentences, alleging nineteen assignments of error, two of which were abandoned in brief to this court.
FACTS
The state adduced the following facts at trial:
On February 11, 1982, the victim, an employee of Exxon, had attended a class at Tulane University. At approximately 8:00 p.m., a classmate gave her a ride to her car which was parked near the intersection of Walnut Street and St. Charles Avenue. As she was unlocking the door to her car, defendant approached her on a bicycle. He threw the bicycle into some nearby bushes and threatened her with a gun, ordering her to get into the car and drive. He sat in the back seat and rummaged through her purse and demanded her jewelry. He ordered her to drive to a secluded area of Audubon Park, where he raped her vaginally and anally, and placed his penis in her mouth. The victim then saw her Exxon employee's pass on the floor of the car and told defendant that she could get money *747 for him with it. He let her drive him to a nearby shopping center. While defendant fumbled at the door of the car on the passenger side, trying to open it, the victim ran quickly from the car and into a grocery store. Defendant drove away. During this sequence of events, defendant threatened to kill the victim if she did not do as he told her.
The police were summoned to the grocery store. They took the victim to the spot on St. Charles Avenue from which she was abducted, and she identified a bicycle found in the bushes as having been the one on which defendant had been riding. She was taken to Charity Hospital for examination. A rectal and a vaginal swab taken at that time were analyzed and found to be positive for seminal fluid. An oral swab also taken was found to be negative.
At about 10:00 p.m. that evening, defendant was involved in a traffic collision at the intersection of Louisiana and Magazine Streets. A security guard working inside of a drugstore at that intersection saw the accident. He came out of the store and saw defendant get out of one of the cars and run away. The guard got in his car and chased defendant until he (guard) apprehended him. He held defendant until the New Orleans police arrived. A search of defendant conducted by the security guard at the scene of the arrest revealed a .38 nickelplated revolver. Defendant was handcuffed and taken back to the drugstore by the guard who searched him again and found a wallet containing credit cards in the victim's name and a check stub in defendant's name. The guard also found the ring stolen from the victim on the ground by his car.
Defendant was taken to the police station. While there, the victim saw him through a two-way mirror and positively identified him as her assailant.
At trial, defendant offered no witnesses nor introduced any evidence.
ARGUMENT NO. 1
(Assignment of Error No. 1)
The defense argues that the trial court was in error in denying its Motion to Suppress Identification.
The basis for this argument is that the procedure by which the victim identified defendant at the police station created a substantial likelihood of mistaken identification. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
At the police station, the victim was told to look at someone through a two-way mirror. The testimony presented at trial and on the hearing on the motion to suppress was unequivocal that the police would not tell the victim why she was to look at defendant. No one else in the room with defendant was visible. She positively identified defendant.
In State v. Guillot, 353 So.2d 1005 (La. 1977), the Louisiana Supreme Court held that:
"[e]ven should the identification be considered suggestive, this alone does not indicate a violation of the defendant's right to due process. It is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure."
Id. at 1008, citing Manson v. Brathwaite, supra.
The court enumerated five factors to be considered in determining whether an identification was suggestive: (1) the opportunity to view; (2) the degree of attention; (3) the accuracy of the description; (4) the witness's level of certainty; and (5) the time between the crime and the confrontation. State v. Guillot at 1009.
In this case, the victim was with defendant for about 45 minutes in her car. She saw him clearly when the light inside her car was on as he opened the door and they drove down a well-lit street. As the Louisiana Supreme Court stated in State v. Guillot, the victim was not "a casual observer; [she] most certainly had [her] attention riveted to the defendant." Id. Also, the description given by the victim to the police was accurate, with the exception of the color of the leather jacket defendant was *748 wearing. She told police that it was gray; it was brown. She testified that she might have thought that the jacket was brown because the interior of her car was brown and the jacket appeared that color in the light. Otherwise, her description of defendant was accurate. She positively identified defendant and did so within a few hours of the crime.
The identification made of the assailant was clearly not tainted by the procedure used. Based upon the criteria set forth by the Louisiana Supreme Court, we cannot find that the trial court abused its discretion. See State v. Smith, 418 So.2d 515 (La.1982); State v. Stewart, 387 So.2d 1103 (La.1980).
This assignment of error is without merit.
ARGUMENT NO. 2
(Assignments of Error Nos. 2, 11, and 16)
Defendant contends that the trial court was in error in refusing to suppress evidence seized from him at arrest and then in allowing some of it to be introduced into evidence at trial.
The basis for this argument is that the security guard, Ronald Carter, who arrested defendant had no authority to arrest him for anything other than a felony, and because fleeing the scene of a traffic accident is a misdemeanor, the guard could not arrest him.
La.R.S. 33:1435.1 provides in pertinent part:
A. Notwithstanding any other provision of law to the contrary, the sheriff of each parish may issue to a municipal policeman a sheriff's commission permitting such officer to have parishwide law enforcement jurisdiction or jurisdiction within such limited area of the parish as the sheriff shall designate. Application for such commission shall be made only by the chief law enforcement officer of a municipality or other political subdivision. A sheriff's commission may empower a local or municipal law enforcement officer to enforce any state law throughout the parish or may be limited in such manner as the sheriff shall determine. Such power may include the authority to arrest law violators both with and without a warrant or may be for the limited purpose of permitting such officer to enforce certain designated state or local laws or perform only those functions designated by the sheriff, and he may determine whether or not the officer shall be permitted to carry a handgun. (Emphasis added)
At trial, Carter testified that he was a commissioned deputy sheriff at the time of defendant's arrest and was empowered with the authorities outlined above. The defense did not attempt to dispute this evidence in any way.
Because we find that the security guard was empowered to arrest defendant, these assignments of error are without merit.
ARGUMENT NO. 3
(Assignment of Error No. 3)
Defendant assigns as error the trial court's ruling that he was not entitled to answers in response to certain questions that he propounded to the state in his Bill of Particulars and Motion for Discovery and Inspection.
Specifically, defendant contends that he was entitled to information regarding who arrested him, who was present at that time, who obtained evidence to be used against him, and the details of the search and seizure.
A bill of particulars sets forth the specific nature and cause of charge against a defendant. La.Code Cr.Pr. art. 484. It does not require the state to allow defendant access to inspect its entire file. La.C. Cr.Pr. art. 723. See State v. Loyd, 425 So.2d 710, 718 (La.1982).
The major thrust of defendant's argument appears to be that he was unable to obtain the name of the security guard who arrested him. The Louisiana Supreme Court has held that a defendant is usually not entitled to the names of state witnesses. State v. Loyd, supra; State v. Marks, 337 So.2d 1177 (La.1976).
*749 This assignment of error is, therefore, without merit.
ARGUMENT NO. 4
(Assignment of Error No. 5)
By this assignment of error, defendant argues that the trial court was in error in refusing to require the state to furnish statements made by the victim to the police.
In support of its contention, defendant argues that the statements were believed to have contained exculpatory evidence. Defendant requests that the case be remanded for an in camera inspection by the trial judge to determine whether the statements made by the victim contain exculpatory evidence, especially evidence which could be used for impeachment purposes.
The defense is entitled only to those statements of prosecution witnesses that are favorable to defendant and which are material and relevant to the issue of guilt or punishment. La.C.Cr.Pr. art. 718(1).
In the case before us, the defense requested in its Motion for Bill of Particulars and Discovery and Inspection that the state supply it with the names of persons who made exculpatory statements and to describe the contents of the statements in detail. The state responded that it did not have any exculpatory evidence in its possession. The defense also filed a motion to produce statements of witnesses. Unlike the situation in State v. Davenport, 399 So.2d 201 (La.1981), there has been no showing that the victim has ever made any statements. The prosecution has consistently responded to any request for such statements that they do not exist.
Furthermore, in response to a request by defendant, the trial court ordered the prosecution to permit the defense to copy and/or photograph any statement made in connection with the prosecution. This order included summaries of oral statements, transcriptions or stenographic recording of oral statements, as well as any written statements. There is nothing in the record to indicate that the state failed to comply with this order; no objection was lodged by the defense at any time.
Although defendant insists that it is entitled to statements made by the victim to the police, the existence of these statements is unproved. Obviously, the victim did give the police information about the incident on the night of the incident, but we cannot say that this would necessarily constitute a statement.
Short of reviewing the entire prosecution file on the case in an in camera inspection, there was no more that the trial court could have done for the defense. In fact, the judge did more than was necessary to protect defendant's rights by ordering the state to produce the statements for the defense rather than simply submit them to an in camera statement.
Because the defense's failure to request any specific information contained in the statements and, moreover, the failure of the defense to show that such statements exist, we cannot find that the trial court erred in denying the motion for production of statements of witnesses, especially in light of the state's assertion that no exculpatory evidence was available.
This assignment of error is without merit.
ARGUMENT NO. 5
(Assignments of Error Nos. 7, 12, and 13)
The defense contends that the trial court erred in allowing the introduction of hearsay testimony.
Some of the testimony to which defendant objects occurred during direct examination of the police officer who interviewed the victim. He stated that "[s]he explained to me what had happened, that she was raped..." The defense objected, and the trial judge instructed the witness to say only that the victim had made a complaint. Shortly thereafter, the officer testified that "[s]he explained that a bicycle was involved." Once again, the defense objected and the court corrected the witness.
Hearsay evidence is inadmissible. La.R.S. 15:434; State v. Broussard, 391 *750 So.2d 1167, 1169 (La.1980). Assuming arguendo that this testimony was hearsay, its introduction is not of such a nature as to require reversal. La.C.Cr.Pr. art. 921. The alleged hearsay evidence was cumulative: the victim testified that her assailant approached her on a bicycle and was able to identify a photograph of the bicycle at trial. Her testimony also established that she made a complaint that she had been raped.
We cannot see how the introduction of these two statements made during the officer's testimony could have in any way affected defendant's rights.
Defendant also contends that the testimony of a police officer to the effect that the victim had identified her assailant and items that he had stolen from her was inadmissible hearsay.
During his testimony, one of the investigating officers, Det. Stanley Hoogerwerf stated that the victim identified a ring and credit cards taken from defendant after his arrest as belonging to her and said that although the gun defendant was carrying looked like the one that he had threatened her with, she could not positively identify it (Tr. at 71). Later, Hoogerwerf testified that the victim identified defendant at the police station the night of the crime.
As with the other statements, the admission of this testimony, although hearsay, does not require reversal. The evidence found in the testimony was corroborated by the testimony of the victim, who stated at trial that she had identified the items and defendant at the police station.
There was no possibility that the information contained in the hearsay evidence could have contributed in the least manner to defendant's conviction.
This assignment of error is without merit.
ARGUMENT NO. 6
(Assignment of Error No. 8)
This assignment of error is based upon the trial court's refusal to allow the defense to inspect a police report used to refresh the memory of a police officer during his testimony.
During trial, Officer Wortman used a police report that he had written to refresh his memory. It is clear from a reading of the transcript that this was the purpose of his looking at the report, rather than simply to read from it. If the officer had used the report as past recollection recorded and simply read the report, the defense would have been entitled to it. Because the report was only used to refresh Wortman's memory, it was not available to the defense. State v. Banks, 341 So.2d 394 (La. 1976); State v. Foret, 315 So.2d 278 (La. 1975).
This assignment of error is without merit.
ARGUMENT NO. 7
(Assignment of Error No. 9)
The defense argues that the trial court was in error in qualifying Dr. William Troxler as an expert in rape examination.
At trial, Dr. Troxler was qualified as an expert in the field of medicine. Defendant contends that Dr. Troxler, although not qualified as an expert in rape examination, was allowed to give an opinion that was consistent with a complaint of rape.
The specific testimony to which defendants objects is:
"Q: And the notation [in the doctor's report] that `the patient denies brutality,' did the patient deny that she had been raped?
A: No, she denied that she'd been punched or cut, that's what I was referring to, not that she had not been raped."
(Tr. at 40).
We cannot conclude that the witness had given an opinion. He simply clarified a portion of his report that had been placed into evidence.
Furthermore, we note that defendant failed to object timely to the witness's testimony. La.C.Cr.Pr. art. 841.
This assignment of error is without merit.
*751 ARGUMENT 8
(Assignment of Error No. 10)
Defendant contends that the trial court was in error in refusing to allow cross-examination of Dr. Troxler about a notation in his report.
During cross-examination of Dr. Troxler, the defense started to inquire about the notation in his report: "L.P.I. December 1980." The notation was the victim's answer to the doctor's query during the examination as to the last prior intercourse. The defense argues that this information was important for impeachment purposes.
La.R.S. 15:498 states that:
"[e]vidence of prior sexual conduct and reputation for chastity of a victim of rape or carnal knowledge shall not be admissible except for incidents arising out of the victim's relationship with the accused."
In State v. Vaughn, 431 So.2d 358 (La. 1983), the Louisiana Supreme Court held that a rape victim's answers to questions as to last prior intercourse and birth control contained in a rape report were properly excluded from the jury. Id. at 362.
In the instant case, because the information was inadmissible, the area in which the defense claims it was entitled to cross-examine Dr. Troxler was properly limited by the trial court.
This assignment of error is without merit.
ARGUMENT NO. 9
(Assignment of Error No. 14)
Defendant argues that the trial court was in error in allowing the prosecution to ask a leading question on direct examination.
A leading question is one which suggests to a witness, the answer which he should give, and generally is prohibited. La.R.S. 15:277; State v. Francis, 337 So.2d 487 (La.1976).
During direct examination of the victim, the prosecutor asked: "Did [defendant] place his penis in your vagina?", to which she responded yes. (Tr. at 80). Even assuming that the question was leading, it did not substantially affect defendant's rights. The testimony as cumulative; the victim later testified that defendant's penis had penetrated her vagina. See La.C.Cr.P. art. 921.
This assignment of error is without merit.
ARGUMENT NO. 10
(Assignment of Error No. 15)
The defense argues that the trial court was in error in allowing the introduction of certain photographs.
In its Supplemental Prayer for Oyer, the defense requested that the state furnish it with any photographs, including but not limited to, any "scene" photographs. The state replied that it had none. At trial, however, the prosecution introduced a photograph depicting defendant's bicycle thrown into the bushes near the spot from which the victim was abducted.
Although the prosecution argues that the photographs were not actually taken of a "scene," this distinction is irrelevant. The defense requested any photographs that the state intended to introduce at trial. Its specific request for certain photographs does not cancel out its more general request.
The state's failure to comply with a discovery request results in reversal only when the jury may have reached the wrong conclusions on the basis of the state's error. E.g., State v. Ray, 423 So.2d 1116 (La.1982). In the instant case, the photographs were simply of a bicycle in the bushes. They were not prejudicial or inflammatory. Furthermore, they were cumulative. The victim testified defendant approached her on a bicycle; a witness testified that defendant left her house earlier that evening on bicycle; the police testified that the bicycle had been found.
Based on all of the evidence presented at trial, we cannot find that the photographs were in any way misleading to the jury. Furthermore, the failure to disclose the photographs should not have impaired *752 defendant's ability to assess the strength of the case against him in preparation of his defense. Id. at 1119.
This assignment of error is without merit.
ARGUMENT NO. 11
(Assignment of Error No. 17)
By this assignment of error, defendant argues that the prosecutor made remarks in closing argument that necessitated a mistrial.
The portion of closing argument to which defendants objects is:
"[L]adies and gentlemen, on voir dire, I explained to you that reasonable doubt is not a doubt based on a whim, and that's what he wants. He wants you to base it on a whim. There is no reasonable doubt in this case. Ladies and gentlemen, the Judge will instruct you that you owe the defendant your individual verdict; but you also owe the people of this community your individual verdicts. Before you let that man walk out of that door right behind you, you've got to be convinced that everything you've hear is untrue or mistaken and there's absolutely no reason to believe that."
(Tr. at 104-05).
Although the propriety of the prosecutor's remarks is debatable, we find that the trial court was not in error in refusing to grant a mistrial on such a basis.
Before overturning a jury verdict on the basis of improper argument, we must be convinced that the remarks influenced the jury and contributed to its verdict. State v. Lee, 364 So.2d 1024 (La. 1978); State v. Crumholt, 357 So.2d 526 (La.1978).
Reviewing the prosecutor's remarks and the totality of evidence presented at trial, we are not convinced that the arguments led to the guilty verdict.
This assignment of error is without merit.
ARGUMENT NO. 12
(Assignment of Error No. 18)
Defendant argues that the trial court should have granted a new trial because there was insufficient evidence to convict him of aggravated kidnapping.
The essential elements of La.R.S. 14:44 as applied in this case are: (1) the forcible seizing and carrying of a person from one place to another; (2) to force a victim (or another) to grant any advantage or immunity or give up anything of apparent present or prospective value, and in order to (3) secure the victim's release from defendant's control.
The Louisiana Supreme Court has held that seizure with intent to commit rape satisfies the requirement that the victim be forced to give up something of value. E.g., State v. Sonnier, 402 So.2d 650 (La.1981).
In this case, there was ample evidence introduced by the prosecution to prove each essential element of aggravated kidnapping. Any rational trier of fact would agree that the evidence presented at trial, viewed in the light most favorable to the state, proved each essential element beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982).
This assignment of error is without merit.
ARGUMENT NO. 13
(Assignment of Error No. 19)
Defendant argues that the sentence imposed upon him was unconstitutionally excessive.
Defendant was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence on each of the charges of aggravated kidnapping and aggravated rape. These sentences were mandatory. Defendant was also found to be a multiple offender on the basis of a conviction of a prior felony (La.R.S. 14:65) and sentenced to a maximum of 198 years. La.R.S. 15:529.1(A)(1). It is this sentence that defendant complains is excessive.
*753 A sentence that is within the statutory limit may nevertheless be excessive in a particular case. La. Const. art. 1, Section 20 (1974). State v. Sepulvado, 367 So.2d 762 (La.1979). In sentencing a defendant, the trial court uses guidelines set forth in La.C.Cr.P. art. 894.1 to individualize the punishment. The court need not articulate each of the fourteen aggravating and mitigating circumstances, but the record must reflect that these guidelines were considered in sentencing a defendant.
In the case before us, the trial court clearly took these guidelines into consideration before sentencing defendant. The judge outlined defendant's criminal history and the nature of the crime involved. The court stated that a lesser sentence would depreciate the seriousness of the offense and that his actions "demonstrate a brutal depravity for which there can be no other remedy but total incarceration." (Sentencing Hearing Tr. at 7).
Finally, we must review the sentence itself. Although the sentences are "apparently severe," State v. Cox, 369 So.2d 118 (La.1976), because they are the maximum allowable, we do not find that the sentence in this case is excessive. A sentence is excessive if it is grossly disproportionate to the severity of the offense. State v. Bonanno, 384 So.2d 355 (La.1980).
The evidence in the record demonstrates that defendant committed a cruel and heartless series of crimes against the victim. The nature of the crimes in itself demanded a severe sentence, but defendant's own background also indicated the necessity for stiff punishment. He had been arrested 13 times prior to this incident including 2 arrests for murder and 2 arrests for attempted murder as well as the prior conviction for simple robbery (the charge had been reduced from armed robbery).
A sentence imposed by the trial court should not be disturbed absent a manifest abuse of discretion. State v. Pearson, 425 So.2d 704, 715 (La.1982) and cases cited therein. Based upon the record, we cannot conclude that the trial court abused its discretion in sentencing defendant to 198 years for armed robbery.
For the foregoing reasons, the convictions and sentences of defendant are AFFIRMED.
AFFIRMED.
NOTES
[1] The jury was unable to reach a verdict on this charge, and the trial court declared a mistrial. The charge was later dropped by the prosecution.