519 So.2d 212 (1988)
STATE of Louisiana
v.
Wilbert JOHNSON.
No. 87-KA-391.
Court of Appeal of Louisiana, Fifth Circuit.
January 11, 1988.
Writ Denied May 6, 1988.
*213 John Mamoulides, Dist. Atty., William C. Credo, III, and Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, for plaintiff/appellee.
A. Bruce Netterville, Gretna, for defendant/appellant.
Before BOWES, WICKER and GOTHARD, JJ.
WICKER, Judge.
Wilbert Johnson, the defendant, was convicted by a six-person jury of aggravated battery (L.S.A.-R.S. 14:34). He appeals this conviction on various evidentiary grounds. We affirm.
Johnson assigns these alleged errors:
1) It is error for the trial court to allow a police officer to testify in narrative fashion as to what the victim told him of the facts of the case.
2) It is error for the trial court to allow the introduction into evidence of a shirt seized from the defendant's home without a warrant where the defendant had timely filed a motion to suppress evidence, but on which a hearing was never held.
3) It is error for the trial court to allow to be introduced into evidence certain vehicle registration papers and insurance papers when the documents were not provided during discovery to the defendant prior to trial, and when the custodian of the documents was not called prior to the introduction of the documents.
4) It is error for the trial court not to allow the defendant to impeach the testimony of the victim by use of a newspaper article recounting the occurrence of the shooting.
The victim, Wallace Craft, was on his way to work in the neighborhood where the crime occurred. He dropped his car off to be repaired a couple of blocks from work and intended to walk the rest of the way. He spotted Johnson's car, a blue Buick, parked nearby. When he saw Johnson bend down, he thought Johnson was reaching for a gun and he started running. Johnson, who was wearing a burgundy red sweatshirt with cut-off sleeves and an insignia, shorts, and a plastic Jerry curl cap, started after Craft and finally caught up with him. He shot Craft in the side and twice in the leg, telling him, "I'm going to kill you. If I don't kill you, I'm going to cripple your ass the rest of your life." Craft's leg has been repaired with wires and rods, and he is now disabled.
A neighborhood resident, Quinn Smith, was sitting on his screened porch and saw Craft pass by and start running. He saw Johnson chasing him, wearing a burgundy sweatshirt and a Jerry curl cap. He heard shots, and he saw Alvin Wooten run in that direction. Johnson pointed the gun at Wooten and shot at him. Johnson then got into his blue Buick and drove off.
Wooten worked at the neighborhood mechanic shop where Craft had left his car and knew both Craft and Johnson previously. He saw Craft being chased by Johnson, who was wearing a burgundy cut-off sweatshirt and a Jerry curl cap. Johnson had a gun. Wooten started out after Johnson, heard shots, and found Johnson standing over Craft saying, "I'm a kill you. If I don't kill you, I'm a cripple you." He saw Johnson fire two shots into Craft; but *214 when Johnson turned and pointed the gun at him, he ran away.
John Parfait, an officer of the Gretna Police Department, responded to a call that there had been a shooting. He found Craft lying in a pool of blood with two gunshot wounds to the leg. Craft related to him that he had been coming to work when he spotted Johnson's blue Buick. Craft said Johnson got out of the car and started running toward him with a pointed gun, chased him for a block, and began shooting. Craft also said that Johnson, who was wearing a red pullover sweatshirt with cut-off sleeves and an insignia, ran back to his car and drove away. Craft told him that Johnson's car might be found at his girlfriend's house. Parfait and other officers went to the girlfriend's apartment and received her permission to go in and talk to Johnson. Parfait found Johnson in bed with a red sweatshirt with cut-off sleeves and an insignia lying on the bed next to him. Parfait said no weapon was ever recovered and that no trace metal detection tests were ever run on Johnson's hands or on the sweatshirt.
Johnson, who testified in his own behalf, and his witnesses presented a very different picture of the events. Wallace lived with his girlfriend, Andrea Collins,[1] in an apartment about three miles[2] from the crime scene. They had quarrelled the night before Craft was shot; and Wallace left to go to his mother's house and then his sister's house, taking his blue Buick with him. Collins needed the car, however, since she had to bring her children to her mother's in the morning before she went to work. She called Johnson at his sister's to ask him if he would be around in the morning so she could use the car. When she couldn't get a commitment, she told Johnson's sister, Lavetta Giles, that she was coming over to get the car. Collins picked up the car about 9:30 P.M. and brought it back to her apartment.
Johnson slept at his sister's house and got up at 5:30 a.m. the next morning. He dressed,[3] fixed a sandwich, and walked to Collins' apartment before 6:00 a.m. Giles didn't actually see that Johnson's car was gone in the morning but was sure that it was and that Johnson walked home.
When Johnson got back to Collins' house, both she and the car were gone. He undressed and went to sleep on the bed. Collins came home from bringing her children to her mother's house about 6:15 a.m. and found Johnson there. She showered but left the shower curtain open so she could hear whether Johnson went out of the apartment. He didn't leave the whole time. Collins dressed and left for work, and she discovered the police were outside looking for Johnson.
In the meantime, Giles had gone to her mother's house and answered a telephone call informing her that Craft had been shot. She went to Collins' neighborhood and saw that the police were everywhere, so she telephoned Johnson to tell him.
Collins admitted to the police that Johnson was in her apartment. She rang the doorbell, and Johnson answered the door in his underwear. One of the officers pointed a gun in Johnson's face and shoved him against the wall. The police searched the house, but Collins told them to leave her things alone. They ordered Johnson to dress, and the burgundy sweatshirt was in the pile of clothes he picked up and put on the bed. Johnson never had a gun, and Collins had never seen him with a gun and wouldn't have allowed one to be kept in her apartment because of her young children.
Since Collins, Johnson, Craft and Giles were all long-time friends, Giles went to see Craft in the hospital. He told her, "This doesn't seem like nothing that Wil *215 [Johnson] would do. Really, to be honest, he didn't do it."
ASSIGNMENT OF ERROR # 1:
Johnson complains that it was error to allow Parfait to testify in a narrative fashion about what Craft told him. The trial judge, when Johnson objected, ruled that an exception to the hearsay exclusion exists when the out-of-court asserter is available for cross examination.
Hearsay is defined as
testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.
State v. Parker, 506 So.2d 675, 681 (La. App. 5th Cir.1987). It is not admissible unless it fits within one of the exceptions to the hearsay rule. L.S.A.-R.S. 15:434. There is no specific exception which is based upon the asserter's availability for cross-examination, and the trial judge erred in finding such an exception.
The testimony falls into the res gestae exception.
Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.
To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
L.S.A.-R.S. 15:447 and 448. Parfait came to the scene of the shooting shortly after it took place.[4] He found Craft lying in his own blood; and Craft told him that Johnson was the person who shot him, outlined the events leading up to the shooting, and told him that Johnson drove a blue Buick and was wearing the burgundy sweatshirt.
The Supreme Court case of State v. Brown, 395 So.2d 1301 (La.1981) involved a shooting. The witness at trial was the emergency room nurse who treated the victim. She testified that the victim told her that the defendant had shot her. The Court noted that this testimony was clearly hearsay but was an exception to the rule.
One such exception is the res gestae doctrine.... This doctrine includes not only spontaneous utterances and declarations made before and after commission of a crime but also includes testimony of witnesses pertaining to what they heard or observed before, during or after the commission of the crime if the continuous chain of events is evident under the circumstances.... The statement made by the victim to Ms. Taylor in the emergency room was part of a continuous chain of events that began when the victim was first battered. Though some three to four hours had elapsed since the shots were fired, the victim had been brought to the hospital by one of her assailants, Randy Brown, had been unconscious since the shots were fired, and was under the immediate pressure of the occurrence. The statement is thus admissible as part of the res gestae.
At pp. 1307-1308. (Citations omitted.) See also, State v. Hoyt, 464 So.2d 841 (La.App. 5th Cir.1985), treating the early complaint of a rape victim as res gestae.
Even if the testimony is not found to be res gestae, however, we find the alleged error to be a harmless one. "Often an erroneous ruling admitting an unsworn out-of-court assertion by a testifying witness will not present grounds for reversal...." State v. Martin, 356 So.2d 1370, *216 1374 (La.1978). This is especially so if the statement is thought to be free of the danger of abuse. State v. Martin, supra, fn. 3 at p. 1374. The objectionable testimony here consists of Parfait's repeating what Craft told him about the crime, which was the same context as the objectionable testimony in the case of State v. Johnson, 443 So.2d 744 (La.App. 4th Cir.1983). The Fourth Circuit found the testimony to have been merely cumulative of what the victim herself testified to at trial and held that "its introduction is not of such a nature as to require reversal." State v. Johnson, supra at p. 750. L.S.A.-C.Cr.P. art. 921.
This assignment is without merit.
ASSIGNMENT OF ERROR # 2:
Johnson complains that his sweatshirt, seized without a warrant, was improperly admitted into evidence. He had previously filed a motion to suppress this evidence and now claims that his motion was never heard.
A minute entry shows that the various pre-trial motions were marked satisfied by Johnson's counsel on August 12, 1986.[5] The transcript of proceedings on that day, however, indicates a possibility that only discovery motions were satisfied.
THE COURT:
... He's [Mr. Netterville] reading the file now in an attempt to satisfy the discovery motion....
. . . .
... I assume those motions have been satisfied. Is that correct?
It appears to us that Johnson has already had an opportunity for a hearing on his motion to suppress. Furthermore, we believe that counsel for Johnson waited too late in the trial proceedings to object to the introduction of the sweatshirt.
Johnson's counsel allowed Parfait to testify, without objection, that Craft told him Johnson was wearing a burgundy red sweatshirt, that he located a sweatshirt matching that description next to Johnson on the bed, and that the shirt in court the day of the trial was the same one he found and seized when Johnson was arrested. Not until all this evidence was before the jury did Johnson object to the introduction of the shirt, referring to his previously filed motion to suppress.
The prosecution took the position that Johnson's objection should have been made at an earlier stage of the proceedings, since his counsel had read the entire file and was aware that the state would seek to introduce the shirt. In allowing the shirt into evidence, the court noted that Johnson had raised no objection at the time the shirt was first shown to the jury.[6]
In addition, we find that this evidence was properly admitted on other grounds. Collins and Johnson both occupied the same apartment; and, according to Parfait's testimony, Collins gave him permission to enter the apartment. A person who possesses common authority over the premises can validly consent to a search of those premises if the consent is freely and voluntarily given. State v. Watson, 477 So.2d 788 (La.App. 5th Cir.1985). Where consent has been given, as here, neither a warrant nor probable cause to search is necessary. State v. Owen, 453 So.2d 1202 (La.1984). Once the police officers were inside Collins' apartment, the burgundy sweatshirt was in plain view of the officers.
The jurisprudence has designated three criteria which must be established before the viewing will be removed from the protections of the Fourth Amendment: (1) the prior valid intrusion into a protected area; (2) an inadvertent discovery of evidence; and (3) the evidence immediately recognizable as contraband or evidence. *217 State v. Duperon, 448 So.2d 720, 723 (La. App. 5th Cir.1984), citing Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) and State v. Brown, 370 So.2d 525 (La.1979). Furthermore, there were sufficient exigent circumstances to enable the police officers to seize the shirt, since they were faced with the possibility of destruction of this important piece of evidence. State v. Bearden, 449 So.2d 1109 (La.App. 5th Cir.1984), writ den. 452 So.2d 179 (La.1984).
This assignment is without merit.
ASSIGNMENT OF ERROR # 3:
Johnson complains of the admission of Craft's automobile registration and other papers because these documents were not produced in response to his discovery motion and are hearsay. With regard to Johnson's motion, we note once again that the motion for discovery was marked satisfied on August 12, 1986, and that his counsel had an opportunity at that time to read the entire file.
We further note that the documents in question are neither relevant nor material because the ownership of Craft's automobile was never an issue at trial. They cannot have contributed in any way to the verdict, and their admission is clearly harmless. L.S.A.-C.Cr.P. art. 921.
This assignment is without merit.
ASSIGNMENT OF ERROR # 4:
Johnson complains that he was denied the opportunity to impeach Craft's testimony by means of a newspaper account of the shooting. He claims in his brief that the article conflicts with Craft's account of the events.
During the trial, counsel for Johnson referred to a motion in limine regarding the use of this evidence. There is no such motion in the record, and Johnson never subsequently tried to introduce or otherwise use this newspaper article. The trial judge noted
in reference to the newspaper article, it's going in reverse order. It's apparently obvious that what somebody told the newspaper man and what he finally decided to print and what his editor finally edits out of the newspaper ... but just cannot be used in evidence ... that's so correct, it is not worth talking about.
In order to use a prior inconsistent statement for impeachment purposes, it is necessary to lay the proper foundation.
Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory.
L.S.A.-R.S. 15:486. This foundation was never laid, and Johnson was not entitled to impeach Craft by means of contradictory statements.
This assignment is without merit.
We affirm Johnson's conviction of the offense of aggravated battery, L.S.A.-R.S. 14:34.
AFFIRMED.
NOTES
[1] Johnson was the father of one of Collins' children, and Collins was pregnant with another, at the time of the crime.
[2] Johnson testified it would take him twenty-five minutes to drive the three miles.
[3] Johnson testified he was wearing a white T-shirt and that his red sweatshirt was kept in the trunk of his car and used only for playing basketball. Giles testified that Johnson was wearing a burgundy sweatshirt when he left her house.
[4] The shooting had occurred about 7:00 a.m., and Parfait had gotten the call at 7:03 a.m. While we cannot tell from the record exactly how many minutes had passed before he reached Craft's side, we know from Johnson's own testimony that the police arrived at Collins' apartment at "something after seven." We also know that Giles' telephone call to warn her brother that Parfait and the other police officers were outside Collins' apartment came as early as 7:10 a.m. and not later than 7:30.
[5] "The Defendant Wilbert Johnson appeared before the bar of the court this day represented by A. Bruce Netterville, attorney. [Netterville represented Johnson at trial and during this appeal.] The motion to suppress evidence, motion to suppress confession, motion to suppress identification, motion for discovery and motion for preliminary examination were satisfied by the defense counsel."
[6] We also note that every other witness, including Johnson's girlfriend and sister, identified the shirt in question as belonging to Johnson, without any further objection from Johnson.