539 So.2d 650 (1989)
STATE of Louisiana
v.
Mark CADE.
No. 88-KA-623.
Court of Appeal of Louisiana, Fifth Circuit.
January 18, 1989.
*651 John M. Mamoulides, Dist. Atty., Johnny Lee, Dorothy A. Pendergast, Asst. Dist. Attys., Louise Korns, of counsel, office of the Dist. Atty., Gretna, for plaintiff-appellee.
Martha E. Sassone, Indigent Defender Bd., Gretna, for defendant-appellant.
Before KLIEBERT, GAUDIN and GOTHARD, JJ.
KLIEBERT, Judge.
The defendant, Mark Cade, was charged by bill of information with two counts of armed robbery (LSA-R.S. 14:64) and one count of attempted armed robbery (LSA-R. S. 14:27, :64). After trial by jury defendant was convicted of one count of armed robbery, one count of attempted armed robbery, and one count of first degree robbery (LSA-R.S. 14:64.1) and was sentenced, respectively, to seventy-five, twenty-five, and twenty-five years at hard labor, to run consecutively without benefit of parole, probation or suspension. We affirm the convictions and sentences.
The facts relative to the first charge of armed robbery are as follows: On September 22, 1986 at 12:30 P.M., as Jean Hopkins walked toward her car on the fourth level of the West Jefferson Medical Center garage, someone grabbed her from behind and said "give me your money or I'll kill you." Hopkins turned toward the assailant, saw that he had a knife, and handed over her change purse, which contained twenty-five dollars. The assailant fled on foot down the stairs.
The facts relative to the attempted armed robbery are as follows: Cynthia Peacock was walking toward her car on the fourth level of the West Jefferson Medical Center garage on December 24, 1986 at 5:00 P.M. when she noticed a man loitering in the area. As Peacock unlocked her car door the man grabbed her, pointed a gun at her, and told her to give him what she had. Peacock grabbed the barrel of the gun and called for help. The assailant fled on foot.
The facts relative to the first degree robbery are as follows: Deidre Gray parked her car on the fifth floor of the West Jefferson Medical Center garage at 9:45 A.M. on August 13, 1987 and then walked toward the elevator. Someone came up behind her, placed a sharp object against her neck, and said: "If you scream you're dead." Gray was forced to return to her car. After taking several rings and thirty-two dollars, the assailant tied Gray to her steering wheel and fled on foot.
The Jefferson Parish Sheriff's Office investigated the incidents. On September 8, 1987 investigating officers learned that Gray's rings had been pawned in New Orleans by Roger Dickerson. Dickerson claimed to have received the rings from his stepbrother, Mark Cade. On September 25, 1987 Cade gave a statement to Detective Glen Toca admitting he robbed Gray with an ink pen "she thought was a knife." Gray later positively identified Cade as her *652 assailant from a five-person physical lineup. Peacock and Hopkins, on separate occasions, identified Cade as their assailant from a seven-photograph lineup.
In his first assignment of error defendant contends the out-of-court identifications by Peacock and Hopkins should have been suppressed as unduly suggestive because "it appears that" police identification numbers on the front of the photographs were exposed, the backs of the photographs contained names, physical descriptions, and criminal records of the subjects depicted, and Peacock's signature was on the back of Cade's photograph when it was viewed by Hopkins.
A defendant attempting to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d 729 (La.1984). Defendant failed to prove the identification was suggestive.
Detective Fred Hebert, who presented the seven-photograph lineup to both Peacock and Hopkins, said the police identification numbers were covered with slips of paper. The photographs, which were introduced as exhibits, still have slips of paper covering the identification numbers. Counsel's insinuation that the numbers were obscured after the victims viewed the photographs is sheer speculation unsupported by any testimony. Detective Hebert also said neither Peacock nor Hopkins looked at the back of the photographs until after a positive identification was made. Peacock and Hopkins offered corroborating statements. Again, counsel's insinuations are unsupported by testimony.
This assignment is meritless.
In his second assignment defendant contends the trial court should have suppressed the statement he gave to Detective Toca because it was obtained subsequent to promises by "the police" not to prosecute defendant's step-brother.
Before a confession or inculpatory statement can be introduced in evidence, the state bears a heavy burden of proving affirmatively and beyond a reasonable doubt that it was made freely and voluntarily and not under the influence of fear, duress, intimidation, menace, threats, inducements, or promises. La.C.Cr.P. art. 703; LSA-R.S. 15:451; State v. Vessell, 450 So.2d 938 (La.1984). Allegations of specific instances of police misconduct in reference to a statement must be specifically rebutted; the state may not rely on general disclaimers. State v. Serrato, 424 So.2d 214 (La.1982).
Defendant said he signed a waiver of rights form and gave a statement after being promised his step-brother would be released from custody. Defendant did not indicate who made the promises. Detective Toca said he explained the waiver of rights form to the defendant, who voluntarily signed the form and gave a statement. Detective Toca denied that promises or inducements were made to the defendant or that the defendant was told his step-brother would be released if a statement was given.
In light of Detective Toca's specific rebuttal of the defendant's allegations, the trial court was faced with contradictory testimony which called for a determination of the credibility of the witnesses. The court accepted Detective Toca's testimony as credible. Such a determination is within the sound discretion of the trial court and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, supra. Review of the transcript of the suppression hearing and the trial reveals the trial court's conclusion the statement was freely and voluntarily given is not contrary to the evidence.
This assignment of error is meritless.
In his third assignment defendant contends the evidence against him was not sufficient to justify the verdict. Defendant does not point to any specific evidentiary deficiency but rather requests that we examine the record independently to determine whether the evidence is sufficient, as mandated by State v. Raymo, 419 So.2d 858 (La.1982).
*653 To uphold a conviction as supported by sufficient evidence an appellate court must find the evidence, viewed in the light most favorable to the prosecution, is sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. State v. Jacobs, 504 So.2d 817 (La.1987). In order to support a conviction for armed robbery, the prosecution must prove the defendant took something of value belonging to another from the person of another or his immediate control, by use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64; State v. Franklin, 501 So.2d 881 (5th Cir.1987). To support an attempted armed robbery conviction, the prosecution must prove the defendant had a specific intent to commit the crime and committed or omitted an act for the purpose of accomplishing that object. LSA-R.S. 14:27; State v. Porter, 249 La. 784, 191 So.2d 498 (1966). The prosecution, to support a conviction of first degree robbery, must prove the offender led the victim to reasonably believe he was armed with a dangerous weapon. LSA-R.S. 14:64.1; State v. Hill, 475 So.2d 1123 (4th Cir.1985) writ denied 478 So.2d 904.
Hopkins identified the defendant as the man who robbed her of twenty-five dollars at knifepoint. Peacock identified the defendant as the man who pointed a gun at her and said "he wanted what I had." The defendant struggled with Peacock for several minutes before running off. Gray identified the defendant as the man who stuck a sharp object against her neck and robbed her of jewelry and thirty-two dollars. The defendant, in the statement to Detective Toca, acknowledged his subjective belief that Gray thought he was armed with a knife. The defendant was linked through his stepbrother's testimony to Gray's pawned jewelry. The above evidence, considered in the light most favorable to the prosecution, was sufficient to convict the defendant on all counts.
This assignment is meritless.
In his fourth assignment defendant requests that the record be reviewed for errors patent on its face, as authorized by La.C.Cr.P. art. 920. Upon review we note two discrepancies in the record. Although the verdict and transcript reflect that the defendant was convicted of one count of attempted armed robbery, the minute entry reflects that the defendant was convicted of two counts of armed robbery. The transcript and commitment reflect that the defendant was denied parole, probation, or suspension of sentence on the attempted armed robbery conviction; the minute entry does not reflect these conditions. The district court will be directed to amend the minute entries to conform to the transcript, verdict, and commitment.
In his fifth assignment defendant contends the trial court erred in denying his motion to sever the offenses for trial because the effect of trying the offenses jointly eroded his presumption of innocence and promoted confusion by the jury in distinguishing the evidence and applying the law to each offense.
The district attorney properly joined in a single bill of information the three counts because they were of the same or similar character and were triable by the same mode of trial. La. C.Cr.P. art. 493; State v. Labuzan, 480 So.2d 420 (4th Cir. 1985). Nevertheless, the defendant was entitled to request a severance of the offenses for trial pursuant to La. C.Cr.P. art. 495.1, which provides:
"If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."
In State v. Washington, 386 So.2d 1368, 1371 (La.1980) the court set out factors for utilization by the trial court when determining whether the joinder results in prejudice:
"... whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the *654 crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile."
In the present case all three armed robberies occurred during daylight hours in the upper levels of the West Jefferson Medical Center garage. Each of the victims was female, alone, and leaving or entering their car when approached from behind by the assailant. While the robberies are not signature crimes, they each present a simple factual situation. The state presented the evidence such that the jury had no trouble distinguishing the evidence for application to each count. Nowhere is this better reflected than in the responsive verdict of guilty of first degree robbery of Gray, who did not actually see a weapon. The jury correctly analyzed the law in light of the testimony in reaching that verdict and was not swayed by the fact defendant was armed with a knife and gun on previous occasions.
In its charge to the jury the trial court said a separate verdict was required for each count in the bill of information, and that a verdict for one count did not have to be the same as on the other counts. The jury was given a verdict sheet for each count with the name of the victim and responsive verdicts. Three separate verdicts were returned. See State v. Labuzan, supra.
The ruling on a motion to sever is addressed to the sound discretion of the trial court, and its ruling should not be disturbed by an appellate court absent a showing of abuse of discretion. State v. Celestine, 452 So.2d 676 (La.1984); State v. Williams, 418 So.2d 562 (La.1982). Review of the record fails to reveal defendant was prejudiced by the joinder of the offenses for trial. The court did not abuse its discretion by denying the motion to sever.
This assignment is meritless.
In his final assignment defendant contends it was reversible error to allow the state to introduce hearsay evidence in the form of a transaction receipt from the pawn shop where Gray's rings were sold. Detective George Seibert of the New Orleans Police Department identified the document as a receipt completed by pawn shop personnel and turned in to the police department, which maintained the records for three years for cross-referencing with lists of stolen merchandise. The person who completed the receipt was not called to testify. Defendant contends that, contrary to the state's position, the document was not admissible under the business records exception of the hearsay rule because the state failed to show the person who completed the document was unavailable to testify. The premise of defendant's argument is correct.
Hearsay evidence is testimony in court, or written evidence of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. See C. McCormick, Evidence, § 246 (Cleary ed. 1972); State v. Martin, 356 So.2d 1370 (La.1978). Hearsay evidence is inadmissible in criminal cases unless a designated exception exists. LSA-R.S. 15:434; State v. Broussard, 391 So.2d 1167 (La.1980). As the pawn shop records were offered to prove the truth of the matter asserted therein, i.e., that the defendant's step-brother pawned Gray's jewelry, the records are hearsay evidence. Thus, the burden was on the state to show that an exception existed to the hearsay rule.
The state contends the records are admissible under the business records exception to the hearsay rule. This exception is delineated in the seminal case of State v. Monroe, 345 So.2d 1185, 1188-1190 (La. 1977):
"The so-called business records exception to the hearsay rule had its genesis in this state in civil rather than criminal law.
* * * * * *
Having no statutory formulation of the business records exception, this Court has in previous opinions quoted with approval the following statement of the *655 common law `regular entries in the course of business' exception:
'A permanent record made in the ordinary course of business, by a person unavailable for testimony, from personal knowledge of the facts recorded or from information furnished by one having a business duty to observe and report the facts, is admissible as proof of the facts recorded, in the absence of a strong motive to misrepresent, if the record is the first collected and recorded memorial.'
This court has recognized that the applicability of the business records hearsay exception in criminal prosecutions depends, among other things, upon the unavailability of the person making the record.
* * * * * *
Both federal and state constitutions provide that an accused is entitled to confront the witnesses against him. U.S. Const. amend. VI; La.Const. of 1974, art. I, § 16; see also, La.Const. of 1921, art. I, § 9. This guarantee has been enhanced in our State's present constitution by its specific statement that an accused is also entitled to cross-examine the witnesses against him. La.Const. of 1974, art. I, § 16. Although the right of confrontation is not absolute, it is generally accepted that any qualification of the right must be justified by necessity and attended by strong assurance that evidence admitted thereunder will be reliable.
* * * * * *
Therefore, in our view, use of the business records exception against the accused in criminal prosecutions should be limited to situations in which the person making the record is genuinely unavailable for trial, either because his identity is unknown or because diligent efforts have failed to procure his attendance as a witness." (Footnote omitted)
See also State v. Vessell, supra.
As the state failed to show that the pawn shop employee who actually made out the receipt was unavailable, the state failed to establish the predicate for the admission of the document, and the trial judge's rulings on defendant's objections were clearly erroneous. State v. Vessell, supra. However, the error was harmless.
La. C.Cr.P. art. 921 provides that a judgment shall not be reversed by an appellate court because of an error which does not affect substantial rights of the accused. In State v. Gibson, 391 So.2d 421 (La.1980), the court adopted the standards enunciated in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) for determining what error may be deemed harmless: A reviewing court (1) must determine whether there is a reasonable possibility that the erroneously admitted evidence might have contributed to the conviction, and (2) must be able to declare a belief beyond a reasonable doubt that the error was harmless beyond a reasonable doubt. State v. Vessell, supra, at 944-45.
Roger Dickerson testified on behalf of the state. He admitted that he received jewelry from the defendant and pawned it at a shop on Canal Street. He identified the jewelry in court from a photograph. The defendant's confession was admitted into evidence. The defendant admitted therein that he and Dickerson pawned Gray's jewelry at a shop on Canal Street. Given the independent evidence that Dickerson pawned the jewelry, the admission into evidence of the pawn shop receipt was harmless error as it was merely cumulative of other evidence. See State v. Johnson, 443 So.2d 744 (4th Cir.1983); State v. Small, 427 So.2d 1254 (2nd Cir.1983).
This assignment of error is meritless.
For the foregoing reasons, defendant's convictions and sentences are affirmed and the trial court is directed to correct the minute entries to conform to the transcript, verdict and commitment.
AFFIRMED.