554 So.2d 769 (1989)
STATE of Louisiana
v.
Quintin J. MAXWELL.
No. 89-KA-447.
Court of Appeal of Louisiana, Fifth Circuit.
December 13, 1989.
*770 John M. Mamoulides, Dist. Atty., Denis Ganucheau and Dorothy A. Pendergast, Asst. Dist. Attys. (Louise Korns, of counsel), Gretna, for plaintiff-appellee.
Anderson Council, Kenner, for defendant-appellant.
Before KLIEBERT, BOWES and WICKER, JJ.
KLIEBERT, Judge.
Defendant Quintin J. Maxwell was arrested on January 22, 1988 and charged by bills of information with two counts. The first was for possession of marijuana in violation of LSA-R.S. 40:966. The second count charged "on or about the twenty-second day of January, 1988 the said Quintin J. Maxwell violated LSA-R.S. 14:95 [did] conceal on or about his person a dangerous weapon, to-wit: `a switchblade.'" On arraignment, he pled not guilty to both counts. After a bench trial he was found not guilty on the first charge of possession of marijuana and guilty on the second charge, i.e., illegal carrying of a weapon. Defendant was sentenced to three months in parish prison, which sentence was suspended on the condition that he serve thirty days in the parish prison and pay court costs. Defendant brings this appeal from that conviction and sentence.[1] We affirm the conviction but remand the case for resentencing.
The following uncontradicted facts were produced at trial:
Shortly after 11:00 p.m. on January 22, 1988, Deputy Sherman and Sergeant Bujole were patrolling a high crime area in Jefferson Parish when they observed a 1979 Oldsmobile Cutlass with three occupants (one of whom was defendant) run a stop sign while turning left at Momfort and Sias Streets. The officers, who were riding in their unmarked LTD police car,[2] activated their flashing lights and sirens, pursued, and eventually stopped the car. Sergeant Bujole testified that once they activated their lights and sirens, the officers noticed a great deal of quick bending movements in the Oldsmobile Cutlass by the three occupants, especially the defendant, who was alone in the back seat and who turned around several times to see the location of the police car.
Once the cars had stopped, the officers, fearing for their safety, immediately exited their vehicle and had the occupants of the Cutlass do the same. At this time, the officers detected a smell of marijuana. The suspects were immediately placed against the rear of their vehicle and patted down for weapons. While Deputy Sherman covered the three suspects, Sergeant Bujole checked the car to make sure there were no weapons accessible to the suspects, as they were not cuffed and were only two to three feet from the car door; in addition, there were only two officers and three suspects. Further, the officers needed the vehicle registration.
As soon as Sergeant Bujole entered the Cutlass he saw, in plain view, a plastic bag with hand-rolled cigarettes underneath the *771 armrest.[3] Because of the odor in the car and the fact that the cigarettes were hand-rolled, Sergeant Bujole believed them to be marijuana. At this point, he retrieved the plastic bag and advised Deputy Sherman of what he had found. As Deputy Sherman placed defendant and the other two suspects under arrest and advised them of their rights, Sergeant Bujole, continuing his search of the car's interior, observed a switchblade knife, positioned just to the left of where defendant had been sitting on the back seat and sticking out only about a half inch. The knife was retrieved by the officers, marked for identification, and was identified at trial as the knife found in the Oldsmobile Cutlass.
At trial in this matter, after the State called its witnesses, defense counsel orally moved to suppress the evidence and for directed verdict. After the court denied both of these motions, the defendant rested its case without calling any witnesses.

ASSIGNMENT OF ERROR ONE
The defendant argues the trial court committed prejudicial error in denying the defendant's motion to suppress the evidence.
It appears from the record that the defendant failed to timely move to suppress the evidence.[4] For an accused to invoke the rule excluding evidence obtained by an alleged illegal search and seizure, it is necessary for him to file a pre-trial motion to suppress the evidence under La.C. Cr.P. Article 703. The failure to do so, in the absence of a showing of surprise or lack of opportunity to file such a motion, operates as a waiver of any claimed violation of constitutional rights against searches and seizures. Accord State v. Quimby, 419 So.2d 951 (La.1982).
Defendant did not file a motion to suppress prior to trial. In fact, he waited until the State called its two witnesses before orally bringing his motion. Because defendant did not show surprise or lack of opportunity to file such a motion, he has waived his right to assert this claim. Moreover, defendant did not even object at trial to the admission of the switchblade knife. On the contrary, he stated that he had "no objection" to such introduction. See generally State v. Johnson, 519 So.2d 212 (5th Cir. 1988), writ denied, 523 So.2d 1334 (La.1988) (wherein this Court concluded that defense attorney waited too long to raise Fourth Amendment objection to introduction of incriminating evidence). See also La.C.Cr.P. Article 841.
In view of the foregoing we hold defendant has waived his right to now raise this issue, thus we will not rule on the validity of the trial court's ruling refusing to grant defendant's motion to suppress.
ASSIGNMENTS OF ERROR TWO AND THREE
Under these assignments defense counsel urges that the trial court committed prejudicial error in (1) denying defendant's motion for directed verdict,[5] and (2) finding defendant guilty of illegal carrying of a weapon, contrary to the law and evidence. As both of these assignments deal with the sufficiency of evidence, we will address them together.
LSA-R.S. 14:95 provides as follows:
A. Illegal carrying of weapon is:
(1) The intentional concealment of any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, on one's person; or
(2) The ownership, possession, custody or use of any firearm, or other instrumentality *772 customarily used as a dangerous weapon, at any time by an enemy alien; or
(3) The ownership, possession, custody or use of any tools, or dynamite, or nitroglycerine, or explosives, or other instrumentality customarily used by thieves or burglars at any time by any person with the intent to commit a crime; or
(4) The manufacture, ownership, possession, custody or use of any switchblade knife, spring knife or other knife or similar instrument having a blade which may be automatically unfolded or extended from a handle by the manipulation of a button, switch, latch or similar contrivance.
B. Whoever commits the crime of illegal carrying of weapons shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both.
C. On a second conviction, the offender shall be imprisoned with or without hard labor for not more than five years.
D. On third and subsequent convictions, the offender shall be imprisoned with or without hard labor for not more than ten years without benefit of parole, probation, or suspension of sentence.
E. The enhanced penalty upon second, third, and subsequent convictions shall not be applicable in cases where more than five years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction or convictions, and the time of the commission of the last offense for which he has been convicted; the sentence to be imposed in such event shall be the same as may be imposed upon a first conviction.
F. The provisions of this Section except Paragraph (4) of Subsection A shall not apply to sheriffs and their deputies, state and city police, constables and town marshals, or persons vested with police power when in the actual discharge of official duties.
In the present case, although the facts would support a charge under LSA-R.S. 14:95 A(4):
"A. Illegal carrying of a weapon is:
(4) The manufacture, ownership, possession, custody or use of any switchblade knife...." (Emphasis supplied.)
the bill of information charged the defendant with a violation of LSA-R.S. 14:95 A(1) which provides:
"A. Illegal carrying of a weapon is:
(1) The intentional concealment of any firearm, or other instrumentaility customarily used or intended for probable use as a dangerous weapon, on one's person;...." (Emphasis supplied.)
At trial, Sergeant Bujole testified that he found the switchblade knife laying on the rear seat of the Cutlass, just to the left of where defendant had been sitting. According to Sergeant Bujole, the knife was protruding out of the seat only about half an inch. On cross-examination, Bujole admitted that at no time did he see the defendant with the weapon in his possession; however, it was within the area of his control. Bujole further testified that defendant's actions in the car, in looking back to determine where the police were, gave him a reasonable suspicion that defendant was the owner of the knife and had intended to conceal it. Defendant did not call any witnesses to rebut the above testimony.
In State v. Fluker, 311 So.2d 863, 866 (La.1975), the Louisiana Supreme Court enunciated the appropriate test to be applied in prosecutions for illegal carrying of weapons, that is, "under the facts and circumstances of the case as disclosed by the evidence, the manner in which defendant carried the weapon evinced an intent to conceal its identity."
The Fluker court noted that one commentator has observed in footnote 3 on page 866:
[t]he problem is whether there has been an intentional concealment. If a part of the weapon is openly displayed, such open display is hardly consistent with an intent to conceal. If a part is subject to view, not through an intention for it to be openly displayed but merely by virtue of sloppy concealment, then it seems there may be intentional concealment even though *773 there is not full concealment. These are jury questions and there ought not be any simplistic rule designed to govern both the rural outdoorsman and the city street roamer by so mechanistic a standard as that of whether the weapon was partially or fully concealed.
Ellis, The Work of the Louisiana Appellate Courts for the 1970-1971 Term, Criminal Law, 32 La.L.Rev. 298, 305-06 (1972) (emphasis in original).
Thus, the issue here becomes whether a rational trier of fact, given the facts and circumstances of the case whether the place in which the weapon was found evinced an intent by the defendant to conceal it.
In the instant case, the fact that part of the switchblade was in plain view (½ inch was exposed), possibly due to sloppy concealment, does not appear to affect the sufficiency of the evidence since full concealment is not necessary to sustain a conviction. We believe that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of violating LSA-R.S. 14:95 A(4) in that he concealed on or about his person (had custody of) a switchblade knife. See State v. Mussall, 523 So.2d 1305 (La.1988). Moreover, the trial judge, as the fact finder, actually found he had intended to conceal the weapon. Hence, we find sufficient evidence to substantiate the guilty verdict and consequent conviction.
ERROR PATENT REVIEW
An error patent review reveals that an illegal sentence was imposed on defendant.
La.C.Cr.P. Article 894 A(1) provides as follows:
"When a defendant has been convicted of a misdemeanor, except criminal neglect of family, the court may suspend the imposition or the execution of the whole or any part of the sentence imposed and place the defendant on unsupervised probation upon such conditions as the court may fix, where suspension is not prohibited under the law. Such suspension of sentence and probation shall be for a period of two years or such shorter period as the court may specify."
Here the trial judge sentenced defendant to three months in parish prison. He ordered defendant to serve thirty days of the sentence without benefit of parole, probation, or suspension of sentence. The judge then suspended the remaining sixty days. The trial judge erred in not placing defendant on probation after suspending a portion of his sentence, in accord with La. C.Cr.P. Article 894 A(1). In addition, there is no authority which allows the trial judge to impose the thirty days in prison without benefit of parole, probation or suspension. In imposing the sentence without benefit of parole, probation, or suspension, it appears the trial judge was trying to make the defendant do "flat time," which he does not have authority to do. See State v. Marisco, 538 So.2d 748 (5th Cir.1989); LSA-R.S. 15:571.3.
The transcript reflects that the trial judge, as part of the sentence, informed defendant that upon failure to pay court costs, defendant would have to serve an additional thirty days in parish prison, in accordance with La.C.Cr.P. Article 884.[6] The minute entry and commitment, however, do not reflect that portion of the sentence. Where there is a discrepancy between the minute entry and transcript, the transcript should prevail. State v. Lynch, 441 So.2d 732 (La.1983).
For the reasons assigned, defendant's conviction is affirmed. However, because *774 of the errors discussed above, the sentence is vacated and the case remanded to the trial court for resentencing in compliance with this opinion.
CONVICTION AFFIRMED, SENTENCE VACATED AND CASE REMANDED.
NOTES
[1] Illegal carrying of a weapon, first offense cases, are not triable by a jury because the maximum sentence does not exceed six months [LSA-R.S. 14:95(B)]. Accordingly, this Court does not have appellate jurisdiction, although it does have supervisory jurisdiction over the matter. La. Const. of 1974, Art. 5, Section 10; C.Cr.P. art. 912.1. Therefore, the defendant's appropriate remedy is by application for supervisory writs. However, in City of New Orleans v. Ballansaw, 475 So.2d 768 (La.1985), the Louisiana Supreme Court noted that the appropriate procedure for the court of appeal in such a circumstance is to "treat the appeal as an application for supervisory writs and to rule on the merits of the application." See State v. Boudreaux, 504 So.2d 1165 (La.App. 5th Cir.1987); State v. St. Amant, 504 So.2d 1094 (La.App. 5th Cir.1987). We do so here.
[2] The officers testified that this unmarked car is known to the residents of the area as a police vehicle because the officers patrolled this area on a regular basis. There is nothing to indicate whether defendant knew it was a police car.
[3] During defense counsel's oral motion to suppress the evidence, it was asserted that the owner of the vehicle had previously entered a plea of guilty to possession of the marijuana confiscated.
[4] The State did not assert at trial nor in its brief that defendant's motion was untimely.
[5] Although defense counsel referred to his motion as a "motion for directed verict," it is more properly called a "motion for acquittal." See La.C.Cr.P. art. 778. In State v. Hargrave, 411 So.2d 1058 (La.1982), the Louisiana Supreme Court stated that "The denial of such a motion may be reversed on appeal only if there is no evidence of the crime or an essential element thereof or where the denial is a palpable abuse of discretion."
[6] La.C.Cr.P. Article 884 provides:

"If a sentence imposed includes a fine or costs, the sentence shall provide that in default of payment thereof the defendant shall be imprisoned for a specified period not to exceed one year; provided that where the maximum prison sentence which may be imposed as a penalty for a misdemeanor is six months or less, the total period for imprisonment upon conviction of the offense, including imprisonment for default in payment of a fine or costs, shall not exceed six months for that offense."